IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CARMEN A. FLUKER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-cv-00234-AGF |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Carmen A. Fluker's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence. On October 30, 2014, pursuant to a written plea agreement, Petitioner pled guilty to using interstate facilities to promote prostitution, in violation of 18 U.S.C. § 1952(a)(3). On February 13, 2015, the Court sentenced Petitioner to 48 months in prison, plus three years of supervised release.[1] Petitioner did not appeal.

In her pro se motion to vacate and set aside her conviction and sentence, Petitioner claims that: (1) plea counsel was ineffective for failing to adequately explain the legal terms used in her plea agreement; (2) her guilty plea was "unconstitutional"; and (3) there was insufficient proof of the essential elements of her criminal charge. After the government filed its response, Petitioner filed a reply memorandum asserting several new

---

1     Petitioner was released from prison on December 21, 2018, before the date of this Memorandum and Order, but she remains on supervised release.

claims, including: (4) that she entered her guilty plea "under the influence of both prescription and street drugs" and (5) that plea counsel was ineffective for failing to present to the Court evidence that Petitioner suffered from several mental and physical impairments, and that she was the primary caregiver for her elderly parents. ECF No. 8 at 1-2. As the record before the Court conclusively demonstrates that Petitioner is not entitled to relief, the Court will deny Petitioner's motion without an evidentiary hearing.

## BACKGROUND

**Criminal Proceedings**

As part of the guilty plea agreement signed by both parties, Petitioner stipulated to the following facts.

> On May 4, 2011, a confidential informant (hereinafter referred to as "CI# 1") working with St. Louis County detectives identified a residence in Bel-Ridge, Missouri as a location where drugs and liquor were being sold at a "club" within. Investigators determined that at the so-called "Yes We Can Social Club" located at 8885 Snowhill Court, nude women danced for and entertained customers in a "VIP" room and marijuana was available for use. The VIP room at the club was a bedroom, where the dancers performed commercial sex acts. Additionally, dancers or their customers had to pay defendant Fluker a fee for access to the "VIP" room.
>
> Investigators also determined that the "Yes We Can Social Club," was incorporated with the state of Missouri on January 3, 2011, and defendant Fluker had Facebook profiles and a listing on Blackplanet.com in which Fluker advertised that she was looking for female dancers for the "club." Following, [CI#1] made video recordings of the activities going on inside the club. This evidence included views of female dancers in various stages of undress, stripping and pole dancing, accepting cash and talking to customers on the main floor and in the basement. Also, the club was located near the Metro Link train station and dancers/prostitutes and customers utilized the Metro Link to travel to the club.
>
> On August 11, 2011, St. Louis County officers executed a search warrant at the residence of the defendant after CI#1 reported that females

under the age of 18 years older were stripping and performing commercial sex acts at the defendant's residence. Several people were arrested after the search warrant was executed. Also, numerous items associated with promoting prostitution were seized which included, but was not limited to: cell phones, executed contracts denoting an agreement between various females and the defendant regarding stripping, items from a bar area where liquor was seized, a stripper pole, video footage from the defendant's surveillance system showing several nude females in different parts of the house partaking in stripping and entering/exiting the "VIP" room with various customers. Following, investigators also interviewed two other minor females who admitted to working at the defendant's house/"Yes We Can Social Club."

After the defendant was arrested in August 2011, she moved from her St. Louis County residence to a house in St. Louis City. In 2014, the defendant then moved back to St. Louis County. Following, a subsequent Confidential Informant (hereinafter referred to as "CI#2") then reported that she had been a stripper and prostitute at all of the defendant's "clubs" for the past several years. Cl#2 then agreed to take a video recorder into the newly formed club named "Club Luscious Social"/defendant's most recent residence, at 424 Warfield in St. Louis County. The video footage showed the defendant's residence set up like a "club," including an area for a bartender, seating areas, a stripper pole and large screen television for the patrons to watch pornographic movies.

During the video recording, the defendant was also seen and heard describing her "club" and the various customers and how she text messaged the "girls" and customers to let them know the "club" was open for business. The defendant also discussed the "VIP" room at her residence. The "VIP" room at the "club" was a bedroom, where the dancers performed commercial sex acts and the defendant would take a share of the profit by charging the customer or dancer a fee to use the room. The fee is called a "tip out." Therefore, the defendant admits that she used the following facilities in interstate commerce to promote and manage prostitution activities: (1) the use of the internet and cellular phone to advertise her "club" to potential and current customers, (2) the use of cellular phones to send texts to dancers/prostitutes and (3) the use of the Metro Link train station by dancers/prostitutes and customers to travel to her "club."

Lastly, defendant Fluker agrees that she, a resident of the Eastern District of Missouri, was the recipient of Social Security Disability payments from [the Social Security Administration ("SSA")] based upon a claim that she had a disability which prevented her from seeking

3

substantially gainful employment. As such, she was required to report to SSA if her condition changed or she obtained employment.

*United States v. Fluker*, Case No. 4:14-cr-00138, ECF No. 43 at 3-5 (Oct. 30, 2014).

On May 7, 2014, Petitioner was indicted on one Count of using interstate facilities to promote prostitution, in violation of 18 U.S.C. § 1952(a)(3). Petitioner initially pled not guilty.

As noted above, Petitioner entered into a plea agreement on October 30, 2014. In exchange for Petitioner's voluntary plea of guilty to the Count charged in the indictment, the government agreed that no further federal prosecution would be brought in this District relative to Petitioner's involvement in the Count, and related substantive conduct, including Petitioner's receipt of payments or subsidies from the SSA and the United States Department of Housing and Urban Development, of which the government was aware at the time. The plea agreement provided that either party could request a sentence above or below the United States Sentencing Guidelines range ultimately determined by the Court. The parties further waived all rights to appeal all non-jurisdictional and non-sentencing issues, and Petitioner waived the right to file a § 2255 motion except for claims of prosecutorial misconduct or ineffective assistance of counsel. *Id.* at 1, 7-8.

The plea agreement stated that Petitioner acknowledged and fully understood the waiver of rights contained in the plea agreement, that Petitioner was fully satisfied with the representation received from her counsel, that the guilty plea was made of Petitioner's own free will under no threat or coercion, and that Petitioner was in fact guilty of the crime charged. *Id.* at 11-12.

At the change-of-plea hearing held on the day that the plea agreement was executed, October 30, 2014, Petitioner stated under oath that she had been treated for schizophrenia for over 13 years, and that she was also receiving treatment for bipolar disorder, depression, and lupus. She stated that she had been taking prescribed medications for her mental illness, but neither she nor her attorney could recall the names of the particular prescription drugs she was taking. Petitioner indicated that, although the medications sometimes made it difficult for her to think clearly, they did not do so on the day of the change-of-plea hearing. Petitioner also confirmed that she had the same level of understanding and ability to proceed on the day of the change-of-plea hearing as she had in her past meetings with her attorney. Other than the prescription medications from her physician, Petitioner denied consuming any alcohol, pills, or drugs of any kind in the 24 hours preceding the change-of-plea hearing. Petitioner also represented that there was nothing about her physical or mental condition at the time that would make it hard for her to understand the court proceeding, and that she felt comfortable that she was thinking clearly and able to understand what was happening at the proceeding. No. 4:14-cr-00138, Tr. of Oct. 30, 2014 hearing, ECF No. 60 at 5-8 (Mar. 7, 2016).

Next, Petitioner represented that she had fully discussed the criminal charge, her case, and the plea agreement with her attorney. Petitioner stated that she understood the terms of the plea agreement, that she was guilty of the crimes to which she was pleading guilty, and that she understood the sentencing ramifications if she pled guilty. Petitioner further represented that she was satisfied with her attorney's performance, that her attorney did everything Petitioner asked her to do, that there was nothing that her attorney

5

should have done but did not do, and that her attorney answered any questions she had. The Court ascertained the factual basis for the guilty plea, which Petitioner confirmed. Near the end of the colloquy, the Court asked the Petitioner whether she had any questions about anything discussed at the hearing, and informed Petitioner that if she had any questions, the Court would try to answer them; Petitioner stated that she had no questions. The Court thus accepted the plea as knowing, intelligent, and voluntary. *Id.* at 9-39.

At the sentencing hearing on February 13, 2015, the Court determined that the Guidelines imprisonment range was 57-60 months and the supervised release range was one to three years. The Court also took into consideration the final presentence investigation report ("PSR") prepared by the United States Probation Office. The PSR detailed, among other things, Petitioner's physical and mental health issues, including her diagnoses of lupus, depression, bipolar disorder, and schizophrenia. The PSR included these conditions as factors warranting a sentence outside the advisory guideline system. The PSR further noted that Petitioner reported she provided assistance and care for her elderly parents. No. 4:14-cr-00138, ECF No. 47 at 13-14, 19 (Feb. 6, 2015).

As noted above, the Court sentenced Petitioner to a below-Guidelines sentence of 48 months in prison, followed by three years of supervised release. Among the reasons the Court listed for justifying a sentence outside the advisory guideline system were the history and characteristics of Petitioner, as well as Petitioner's physical health issues. No. 4:14-cr-00138, ECF No. 52 at 3 (Feb. 13, 2015).

**Motion to Vacate**

In her first claim for relief, Petitioner asserts that plea counsel was ineffective for failing to explain the terms used in the plea agreement and various aspects of legal proceedings generally, such as voir dire and the judge's role as a "gatekeeper." ECF Nos. 1 & 1-2. In her second claim, Petitioner simply asserts that her guilty plea was "unconstitutional." ECF No. 1 at 5. Petitioner explains in the memorandum of law attached to her motion that the failure of the government or her attorney to explain the terms of the plea agreement rendered her plea involuntary. ECF No. 1-2 at 12. In her final claim, Petitioner argues that the government failed to prove the elements of the criminal statute as charged. ECF No. 1 at 7.

In response, the government asserts that Petitioner's first claim is without merit and that Petitioner's remaining claims were waived by the plea agreement.

After the government filed its response, Petitioner filed a reply brief, which did not respond to the government's arguments and instead, as noted above, asserted several new claims. Specifically, Petitioner asserts in her reply brief that her "plea was entered under the influence of both prescription and street drugs." ECF No. 8 at 1. Petitioner further asserts that her attorney was ineffective for failing to present to the Court evidence of her various mental and physical conditions, including lupus, bipolar disorder, and schizophrenia, and evidence that Petitioner was the primary caregiver to her elderly parents. *Id.* at 1-2. Petitioner contends that failure of her attorney in these respects resulted in a sentence that was "higher than necessary." *Id.* at 2. Additionally, Petitioner

also suggests that her ex-husband owned the social club described in the indictment and that her own involvement in the club was limited to cleaning. *Id.* at 2.

## **DISCUSSION**

Pursuant to 28 U.S.C. § 2255, a federal prisoner in custody[2] may seek relief from a sentence imposed against her on the ground that "the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. A petitioner's ineffective assistance of counsel claim is properly raised under § 2255 rather than on direct appeal. *United States v. Davis*, 452 F.3d 991, 994 (8th Cir. 2006).

**Ineffective Assistance of Plea Counsel and Voluntariness of Plea (Claims I and II)**[3]

"To establish ineffective assistance during plea negotiations, the petitioner must show 'counsel's representation fell below an objective standard of reasonableness' and 'that such deficient performance prejudiced' the defense." *Davis v. United States*, 858 F.3d 529, 532 (8th Cir. 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). A defendant who pled guilty upon the advice of counsel may challenge the voluntariness of that plea through a claim of ineffective assistance of counsel. *Hill v.*

---

[2] A person on supervised release is "in custody" under § 2255. *See Masten v. United States*, 752 F.3d 1142,1146 n.2 (8th Cir. 2014) (citing *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997)).

[3] Notwithstanding government's opposition, the Court will consider the merits of Petitioner's second claim because if, as Petitioner contends, the plea agreement was not entered into knowingly and voluntarily, any waiver contained therein would not be enforceable. *See United States v. Andis*, 333 F.3d 886, 889 (8th Cir. 2003) (en banc).

*Lockhart*, 474 U.S. 52, 56-57 (1985) (applying *Strickland* to the guilty plea context). "A guilty plea constitutes a waiver of constitutional rights and must be both knowing and voluntary." *Gray v. United States*, 833 F.3d 919, 923 (8th Cir. 2016). Prejudice in this context requires the petitioner to show that "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

In resolving § 2255 claims in the context of a guilty plea, the court may consider the plea agreement, stipulated facts, and a colloquy between the defendant and the court, among other things. *United States v. Scharber*, 772 F.3d 1147, 1150 (8th Cir. 2014). In particular, a "defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Adams v. United States*, 869 F.3d 633, 635 (8th Cir. 2017).

The Court concludes that Petitioner's first and second claims are without merit. Petitioner's guilty plea was made knowingly and voluntarily. Her assertion that her attorney did not adequately explain the terms of the plea agreement or the legal process in general, and that she therefore did not understand the plea agreement or its ramifications, is directly contracted by Petitioner's representations in the plea agreement and plea colloquy described above. Moreover, the Court offered to answer for Petitioner any questions she had about the proceedings, and Petitioner stated that she had no questions.

Petitioner's representations in the plea agreement and colloquy also discredit her ineffective assistance of counsel claim. Because Petitioner stated under oath that she was satisfied with the work of her counsel, and that she was informed of the charge against

her, her right to proceed to trial, and the consequences of a guilty plea, she cannot overcome the strong presumption that her attorney competently represented her. Nor has Petitioner identified anything in the record suggesting that she received ineffective assistance. To the contrary, the government had strong evidence in support of the criminal charge, including video recordings. Nevertheless, the plea agreement shows that the government agreed not to prosecute Petitioner for the fraudulent receipt of Social Security payments, and Petitioner therefore received a variance from the low end of the Guidelines range.

Finally, Petitioner has failed to establish prejudice. Petitioner does not, and could not credibly, assert that, but for counsel's alleged errors, she would have insisted on going to trial.

**Sufficiency of the Evidence (Claim III)**

As the government correctly asserts, "a plea of guilty admits all of the elements of a criminal charge, and waives all challenges to the prosecution either by direct appeal or by collateral attack, except challenges to the court's jurisdiction." *Mack v. United States*, 853 F.2d 585, 586 (8th Cir. 1988). Petitioner does not challenge the Court's jurisdiction, and by virtue of her guilty plea, which the Court has confirmed was knowing and voluntary, she has admitted the elements of the crime charged and waived any sufficiency-of-the evidence challenge. As such, Petitioner's third claim is without merit.

**Remaining Claims**

The Court need not address the remaining claims, raised for the first time in Petitioner's reply brief. *See Smith v. United States*, 256 F. App'x 850, 852 (8th Cir.

10

2007) ("[T]he district court did not err in dismissing claims raised for the first time in a § 2255 reply brief."). In any event, the claims are without merit as directly contradicted by the plea agreement and plea colloquy.

Specifically, Petitioner denied, under oath, that she was under the influence of any drugs other than her prescription medication, which she stated did not inhibit her ability to think clearly or understand the change-of-plea proceeding; Petitioner informed the Court of her mental and physical impairments,[4] which were also detailed in the PSR, along with the fact that Petitioner cared for her elderly parents, and which were considered by the Court among the reasons for sentencing Petitioner below the Guideline range; and Petitioner admitted to criminal activity that went far beyond merely cleaning the "social club" at issue.

**An Evidentiary Hearing is Not Warranted**

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." *Anjulo–Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted). However, an evidentiary hearing need not be held if a petitioner's "allegations cannot be accepted as true because they are contradicted by the record, inherently incredible or conclusions rather than statements of fact." *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998). Because the record conclusively shows that Petitioner is not entitled to relief as a matter of law, the Court need not hold an

---

[4] Nothing in the record of Petitioner's criminal case or in the § 2255 briefs now before the Court suggests that Petitioner was not competent to enter a guilty plea.

evidentiary hearing.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Carmen A. Fluker's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence is **DENIED**.

**IT IS FURTHER ORDERED** that this Court will not issue a Certificate of Appealability as Petitioner has not made a substantial showing of the denial of a federal constitutional right as required by 28 U.S.C. § 2253(c)(2).

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of March, 2019.